ECKERT-FAIR CONSTRUCTION COMPANY, Inc., Appellant,

v.

Mike FLABIANO, d/b/a American Terrazzo Company, Appellee.

No. 15687.

Court of Civil Appeals of Texas.

Dallas.

Dec. 9, 1960.

Rehearing Denied Jan. 20, 1961.

**630**

Currie, Kohen & Freeman, Ralph W. Currie, Dallas, for appellant.

Witts, Geary, Hamilton, Brice & Lewis, Jim K. Choate and W. S. Barron, Jr., Dallas, for appellee.

THOMAS, Justice.

This is a building and construction contract case. Appellant Eckert-Fair Construction Company, Inc., was the general contractor for the erection of the Library and Administration Building. of Kilgore College, at Kilgore, Texas. Mike Flabiano, doing business as the American Terrazzo Company, was the subcontractor to install the terrazzo floor work specified in Section 24 of the General Specifications.

Appellant, as plaintiff below, sued its subcontractor and alleged that the appellee failed to perform his subcontract in the following respects: (1) to the satisfaction of the architect; (2) to the satisfaction of the appellant; (3) in a good and workmanship manner; (4) in accordance with the Specifications. Particularizing under 3 and 4, appellant detailed some eight instances in which the appellee failed to perform the work in accordance with the Specifications. Appellant further alleged that because of appellee's failure the terrazzo floor of the building cracked, crumbled and disintegrated and as a result thereof the architect decided that the work had to be replaced in a manner in accordance with the Specifications and in a manner satisfactory to the architect; that appellee refused to correct the defective work, and that appellant was compelled to, and did, tear out the defective work and caused it to be done over again in such manner as would conform to the contract and would satisfy the requirement of the architect-engineer; that in doing so appellant actually and necessarily expended the sum of $13,028.73 for which he sued after crediting the unpaid balance due on appellee's contract.

Appellee denied specially that he had failed to perform his subcontract as alleged by appellant. He alleged that wherever he varied from the letter of the General Specifications such was done with the consent and agreement of the architect-engineer and appellant; that the terrazzo floor in question was built according to the plans and specifications and to the satisfaction of the architect-engineer and of the appellant; that after he had *completed* the terrazzo work it cracked for reasons other than the performance of the appellee, but because of an upheavel or shifting in the foundation upon which appellee had to lay the floor; that the foundation was not part of the work required to be done by the appellee; that the floor laid by appellant after it had removed the floor constructed by appellee also had cracked in substantially the same manner as the floor originally installed by the appellee, and that the architect-engineer had accepted that floor. Finally, appellee, by cross-action, sued for the unpaid balance due on his contract together with attorney's fees.

The case was tried to a jury which returned into court its answers to special issues submitted to them. The jury found that appellee did perform the work in accordance with the plans and specifications, or as varied by agreement, in each of the particulars complained of by the appellant. Furthermore, the jury found (using the numbers of the special issues); 7. That appellee did lay the terrazzo floor to the complete satisfaction of the inspectors and supervisors of the architect-engineer; 8. That he did furnish the material for and

complete the work of laying the terrazzo floor to the complete satisfaction of the architect, Preston M. Geron; 9. That appellee completed the work of laying the terrazzo floor to the complete satisfaction of appellant; 12. That the damages complained of by the appellant were caused by soil conditions existing under the building in which the terrazzo floors were constructed; 13. That the damages complained of were caused by defects in the concrete slab over which the terrazzo floors were laid, which occurred after the terrazzo floors were completed.

By the express terms of the subcontractor appellee agreed to furnish all necessary tools, apparatus, labor and material and perform all work required to construct and complete all terrazzo work per Section 24 of the Specifications for the Library and Administration Building, Kilgore College, Kilgore, Texas, in accordance with plans and specifications and addenda prepared by Preston M. Geron, Architect-Engineer. All conditions of the contract between Kilgore College Board of Trustees and appellant were "Made a part of" the subcontract. The subcontract also specifically provided: "(a) By this contract the subcontractor agrees to complete the above mentioned items to the complete satisfaction of the inspectors and supervisors of the architect-engineer * * *". " * * * (b) the subcontractor agrees to furnish such material and complete his work * * * to the complete satisfaction of the Contractor and the Architect."

 By its first four points of appeal (all of which we must overrule) appellant contends that it was entitled to judgment notwithstanding the verdict because the work done by appellee was rejected and its removal and replacement ordered by decisions of the architect and his inspectors, as well as by appellant, as unsatisfactory, which decisions were binding on appellee in the absence of pleading and proof that they were arbitrary or unreasonable. This requires a construction of the provisions of the subcontract that appellee's work was to be done to the complete satisfaction of appellant, the architect and his inspectors.

There is no provision of the subcontract making the decisions of the architect or appellant final and binding. On the contrary, Art. 40 of the General Specifications provides that only "the architect's. decisions, in matters relating to artistic effect, shall be final, if made within the terms of the Contract Documents"; otherwise, unless expressly provided "all the Architect's decisions are subject to arbitration". It is not contended that any decision relating to "artistic effect" is involved. The arbitration procedure outlined in the Specifications was not invoked by either party even though it was agreed therein "that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other." However, no point is made that appellant cannot maintain its suit or appellee his cross-action. There are no provisions of the Contract Documents regarding the effect of decisions of the contractor or the architect's inspectors.

In Black v. Acers, Tex.Civ.App., 178 S.W.2d 152, 154, Writ of Error Refused, this court considered a case which was practically the reverse of this one. There the contractor agreed the house should be "built to meet requirements of the Federal Housing Administration", and it was undisputed that all F.H.A. requirements had been met and its construction supervisors on the job had approved the house. However, a jury found that the contractor failed to build the house according to plans and specifications in certain respects. The trial court, notwithstanding the verdict, entered judgment for the contractor, sustaining the defense that since the F.H.A. had certified the house as built met its requirements, the effect of the certification was to constitute such agency the final arbiter in all matters touching performance of the contract. In an opinion by Justice Young, we reversed and rendered judgment for the owner against the contractor. Although we recognized

that the parties might bind themselves to abide by the decisions, certifications, etc., of an architect or third person the opinion quoted with approval from 54 A.L.R. 1255, to the effect: "But to make such a certificate or decision conclusive requires plain language in the contract. It is not to be implied". We held "in absence of an express proviso of conclusiveness regarding F.H.A. decisions, none should be implied, for right of recourse to the courts may not be contracted away by implication", citing authorities. See also Galveston H. & S. A. Ry. Company v. Henry & Dilley, 1885, 65 Tex. 685.

Appellant relies on State v. Martin Bros., 138 Tex. 505, 160 S.W.2d 58, 60, the cases cited therein and others of similar import. These cases are not controlling here because there the contract specifically provides not only that the work involved be done to the satisfaction of the Highway Engineer but that he "will act as referee in all questions arising under the terms of the contract between the parties thereto and *his decisions shall be final and binding.*" Appellant attempts to read into the subcontract here the words we have emphasized. This it cannot do. They "are in derogation of the common-law right of trial by jury * * * and the law will compel parties to resort to such a means of settling their disputes only when the terms of their contract are clear and certain in showing that they had such an intention." 17 C.J.S. Contracts § 497, p. 1015; Seale v. Roy M. Mitchell Contracting Co., Tex.Civ. App. Austin, 321 S.W.2d 149, Writ of Error Refused.

Even if dissatisfaction on the part of appellant, the architect or the inspectors had been shown, it would seem that it would have been unreasonable as a matter of law to require appellee not only to complete its work according to the plans and specifications, but also to remedy any damage to the floor caused by defects in the concrete slab upon which the floor was laid for which slab, and its defects, appellant alone was responsible, all as found by the jury. Tim-

mons v. Fogel, Tex.Civ.App. Dallas, 278 S.W.2d 549, no writ history. Any dissatisfaction expressed by appellant, the architect or his supervisors and inspectors "must be founded on such facts as would induce such action on the part of a reasonable man * * *. 'That which the law shall say a contracting person ought to be satisfied with, that the law will say he is satisfied with.'" Fessman v. Barnes, Tex.Civ.App., 108 S.W. 170, 171; 10 Tex.Jur.2d p. 23, "Building Contracts", § 20; 44 A.L.R.2d p. 1114.

Furthermore, there are findings of the jury (answers 7, 8 and 9) based on sufficient evidence, that appellee did perform to the complete satisfaction of those named in the subcontract. A. D. Fair, an officer of appellant, testified that after the terrazzo floor was laid and finished it was satisfactory, and that when his company turned the building over to the architect for inspection the floor was acceptable to him, and he was satisfied. Appellant's construction superintendent testified that after appellee completed the final step of grinding the floor it was acceptable to him at such point. The Architect's supervisor on the job when the floor was being laid from about February 15th to April 15th, and who made certain requirements as the work progressed until completed did not testify. The Architect, Preston M. Geron, testified:

"Q. Did you ever authorize anybody to accept this building with the Flabiano terrazzo work done in it? A. Sir, as I remember the situation, the building was accepted, but the Specs require the Contractor to guarantee the workmanship and material for a period of one year, and it was during that time that the terrazzo work began to crack and give trouble; and, as I remember, it was under the one year guarantee that we required the removal of the terrazzo."

Appellee testified that at the time he completed the floor, about April 15, 1957, neither the architect nor his representatives

nor the building superintendent nor inspector of appellant stated the floor was unsatisfactory. However, in May he was told about cracks developing in the floor. At least twice appellee made an effort to repair cracks in the floor. In December 1957, the architect ordered the floor replaced at appellee's expense. On December 22, 1957, appellee removed a part of the flooring to determine the cause of the cracking. By letter of that date he reported to appellant that he found the concrete slab underneath cracked in several places; also, that the slab had settled at one place and had risen in the middle, and he demanded to be paid for any further work.

A. P. Noyes, a registered professional engineer, who has done all municipal construction work for Kilgore since 1934 testified about soil conditions there; that tests he made around the building involved indicated the soil there had a high P.I. (Plasticity Index) value indicating it had the characteristic to a high degree of shrinking when going from a wet to a dry state, and expanding when going back to a wet state, which P.I. caused considerable damage to buildings in Kilgore as a result of shifting soil. Mr. Noyes had observed cracks in the concrete slab in question, and based on tests he had made and examination of the slab and floor, the cracks in the concrete slab would cause the terrazzo floor to crack.

It is true that the witness Cline, field supervisor of construction for the architect, who inspected the floor for the first time in December, 1957, found nothing wrong with the foundation of the building. He testified that the failure of the terrazzo floor was due to faulty workmanship and materials on the part of appellee. Acting for the architect Mr. Cline stated he could not approve appellee's work as being built to his satisfaction and required removal of the floors. The architect-engineer, Mr. Geron, also testified that the floor on the December inspection was not acceptable and he required it torn out.

Therefore, we hold (1) the decisions of the architect, the general contractor and their inspectors or supervisors, are not final and binding on the parties and it is not necessary that appellee plead and prove the decisions were arbitrary, unreasonable, fraudulent, based on misconduct or bad faith, and (2) any dissatisfaction of the architect, appellant, et al., would be unreasonable in the face of the jury findings, and (3) the findings of satisfaction of the architect, appellant, the inspectors and supervisors, are amply supported by the evidence.

In his fifth point appellant complains of alleged error of the court in awarding appellee a money judgment on his cross-action for the balance unpaid under the subcontract because (a) the cross-action had been stricken for failure to allege performance; and (b) no jury findings were sought or obtained of performance. No authorities are cited to us by appellant to sustain the point.

The fifth point is not well taken because (a) having been granted leave to amend, appellee filed his "first supplemental cross-action" in which he alleged he had performed the subcontract "according to the terms, plans and specifications" thereof; whereupon the parties proceeded to trial without objection, and (b) the answers of the jury to the issues submitted to them support the judgment for appellee. The controlling issues having been placed before the jury, the verdict will not be set aside or judgment reversed "because of the failure to submit other and various phases or different shades of the same issue." Rule 279, Texas Rules of Civil Procedure. It is not proper to submit issues which are only the negative of those submitted. "No reason is apparent why the finding of the jury upon the issue affirmatively submitted cannot justly serve the diverse purposes of plaintiff and defendant. * * * It is never necessary to bring about complete duplication where opposite issues are involved." Wright v. Traders & General

Ins. Co., Tex.Com.App., 132 Tex. 172, 123 S.W.2d 314, 317 (Syl. 5), opinion adopted by Supreme Court.

Appellant's sixth point complains of the error of the court "in basing its judgment upon the verdict of the jury because the jury's answers were so against the overwhelming weight and preponderance of the evidence as to require a new trial in the interest of justice." We have considered and weighed all the evidence as shown by extensive record and conclude that the verdict is not so against the great weight and preponderance of the evidence, which is partly outlined herein. There is substantial evidence on both sides from both lay and expert witnesses. The case was vigorously contested, well prepared, well tried, and well submitted to us. The jury has resolved the sharp conflict in the evidence and we will not disturb the judgment based thereon. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

All points of appeal are overruled and the judgment of the trial court is affirmed.